259 So.2d 840

Homer SLAUGHTER, alias

v.

STATE.

6 Div. 206.

Court of Criminal Appeals of Alabama.

Feb. 8, 1972.

Rehearing Denied March 7, 1972.

J. Louis Wilkinson and Charles Crowder, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

PER CURIAM.

This appeal is from a conviction of murder in the first degree, with a sentence of life.

The state's evidence shows that on Sunday afternoon, July 13, 1969, Officer Spencer, an off duty Birmingham policeman, was on special duty at the swimming pool at Harris Park, Birmingham, Jefferson County, Alabama; that there was a number of children and young people in and around the pool, and the appellant, accompanied by his sister, another woman and a man, visited the park and went in swimming; that there were several employees of the pool, including at least two life guards, one a male and the other a female, who were on duty; and that the manager of the pool later came in during a difficulty between the deceased and appellant, and that the difficulty seemed to begin when Mr. Brad Crow, one of the life guards, above mentioned, attempted to have a young Negro boy pick up some paper which he, allegedly, had thrown or dropped near the pool; that the boy refused to do as the life guard requested, and during the altercation, the appellant came up and entered into the argument; that the appellant became angry and used obscene, insulting and profane language of a vile type in the presence of and hearing of many of the children in the pool and the female life guard; that Officer Spencer, at this time, advised the appellant, more than once to leave the park; that the appellant continued to use the type language, above referred to, and he and the witness, Andrew Thompson, started away from the pool, while he still continued to use the language as above indicated; that the officer then told the appellant to stop and wait, and advised him he was under arrest. Thereupon, the appellant continued to walk away and to mumble something that was not understandable to some of the witnesses, and at that time the officer took his service revolver out, and told appellant to stop or he would drop him; that the appellant failed to stop, and said the officer would have to shoot him in the back if he shot him, the appellant continuing up some steps leading toward one of the streets adjacent to the park; the officer put his gun back in his holster and ran up to the appellant and either struck him or took hold of him, some witnesses saying one thing and some the other; that he and the appellant grappled and fell to the ground and his pistol fell out to one side; that the appellant and the officer both attempted to reach the gun, but the appellant grabbed it, stood up and backed away several steps with the revolver in his hand pointed toward the officer, and as the officer was attempting to rise, and still in a crouching position, but facing at an angle away from the appellant, the appellant fired a shot from the revolver, which struck the officer in the right side of his chest, the bullet going completely through his body, and from which wound he later

died. The person accompanying the appellant when he was leaving the pool, ran away at or about the time of the shooting and the appellant, after a very short time, also ran and was later arrested.

The appellant did not testify himself, but offered several witnesses in an attempt to sustain his plea of not guilty by reason or self defense.

After indictment and pending trial, appellant made a motion for a change of venue, alleging that he could not receive a fair trial in Jefferson County because of the publication by the Birmingham News and Post Herald of allegedly prejudicial and inflammatory matters concerning the homicide with which the appellant was charged.

The motion was heard before a panel of three circuit judges of the Tenth Judicial Circuit: Honorable Wallace Gibson, Honorable Joseph Jasper and Honorable Elias C. Watson; and after submission, it was overruled, the entire panel concurring.

■ We have before us a transcript, properly certified, of the hearing. The action of the court is not stressed in brief of appellant, but, in attempting to examine the entire record under our statutory duty, we have carefully studied the evidence offered by the appellant and reached the conclusion that he had not carried the burden cast upon him of proving his motion to the reasonable satisfaction of the court. Maund v. State, 254 Ala. 452, 48 So.2d 553.

The exhibits consisted of portions of the Birmingham newspapers regarding the charges against defendant and quoting from statements made by the Mayor of sympathy towards the family of deceased, and condemning violence, along with a story of a meeting of some 50 people with the Birmingham City Council to demand better protection for police and a gathering of protest at the home of the Mayor while he was away.

Also one or more copies of a resolution of sympathy and condemnation of lawlessness, etc., by the Legislature was admitted into evidence, but the evidence showed it was not published in any newspaper, but was sent to the family of deceased. There was evidence of the approximate population of the Birmingham Metro area of 600,000 and a circulation of approximately 210,000 of the Birmingham News and of approximately 20,000 of the Post Herald in this area.

No one testified that the appellant could not receive a fair trial because of the unfavorable publicity. There was no error in overruling the motion. Beddow v. State, 39 Ala.App. 29, 96 So.2d 175; Malloy v. State, 209 Ala. 219, 96 So. 57.

The motion for discovery was properly overruled, it being discretionary with the court. As it developed, much of the information sought was given by the District Attorney. No error appears here.

■ Appellant's motion to be allowed two peremptory strikes for each by the state was properly overruled, under the law governing this procedure in the Tenth Judicial Circuit (Jefferson County). Volume 14, (Appendix) Code 1958, Recompiled, § 714.

■ Appellant objected to the statement of the Assistant District Attorney to the jury in argument that "using profanity before a woman or children is against the law, and is against the law like running a stop sign." The court overruled the objection and the appellant excepted.

The argument is made that this is an incorrect statement of the law, and the action of the court was erroneous to the injury of the appellant's case. Title 14, § 11, Code 1958, makes it a misdemeanor to use in the presence of or hearing of any girl or woman, etc., abusive, insulting or obscene language. One definition of profane given in Webster's International Dictionary is to vulgarize. Vulgar under the same authority, means offensive to good taste. Then, too, the word "profanity" in its common, everyday meaning

and usage is broad enough to cover obscenities and spoken insults. The evidence is replete with an account of the use of this kind of language by appellant at the pool in the hearing of at least one woman and many children. If there was technical error on the part of the court in its ruling, we do not think the substantial rights of the appellant were injured. Supreme Court Rule 45.

■ Appellant's refused charge 45 is as follows, to wit:

"If deceased first used verbal insult toward the defendant, without any provocation whatever on the part of the defendant, and defendant retorted by using the character of insult to deceased, and if when he was assaulted by deceased, defendant had the right to defend himself against such aggression upon the part of the deceased; if such you find occurred, provided that there was no reasonable means of escape without increasing his real or apparent danger, and if you further find that under the circumstances existing at the time defendant shot, he honestly believed he was in eminent danger to life or limb and the conditions were such at the time as would have impressed upon the mind of a reasonable person that there was such eminent danger, though there was no such danger in fact, but that it was only apparent, then defendant would have been justified in shooting deceased."

This charge was held to state a correct principle of law in Hubbard v. State, 10 Ala.App. 47, 64 So. 633. The evidence in Hubbard is not sufficiently set out to show whether the charge was properly hypothesized on the evidence. The charge was essentially based upon a somewhat similar charge in McEwen v. State, 152 Ala. 38, 44 So. 619; with some change in wording to meet the criticism of the court in that case. However, this charge is not hypothesized on the evidence in the case at bar, and therefore properly refused by the court.

Lowery v. State, 39 Ala.App. 659, 107 So. 2d 366; Locklear v. Nash, 275 Ala. 95, 152 So.2d 421; Coulter v. Holder, Ala., 254 So. 2d 420 (1971). See innumerable cases in Alabama Digest, Criminal Law, under ☞814(3).

The charge proceeds on the theory that the appellant suffered "verbal insult" from the deceased, without any provocation. Under the evidence, the most that could be said to support this theory was that the deceased addressed the appellant, who was about 21 years old, as "boy," when calling for him to stop, or come back. We see nothing inappropriate in the use of the term to a young male person of that age.

The charge was further abstract as to the case at bar because all of the evidence showed that there was nothing to prevent the retreat of the appellant at the time of the fatal shooting of the officer, without increasing the danger to appellant. In addition, given charge 22 covered the doctrine of retreat.

■ Refused charge 13 is somewhat contradictory in its phraseology, but the substance of what was attempted to be stated therein was covered by the oral charge of the court (pages 462–463 of transcript). Refusal to give a requested written charge is not error where the substance of the charge was covered by the oral charge of the court. Title 7, § 273, Code 1958 Recompiled; Cooper v. State, 277 Ala. 200, 168 So.2d 231.

■ Charges 8 and 11 deal with the requirements of an officer under Title 15, § 155, Code 1958 Recompiled, when making an arrest, but there are exceptions to the duty of an officer to make known his official capacity and the cause of arrest.

When the official capacity of the officer is known to the person arrested, there is no duty to inform him of this fact. Title 15, § 155, supra, Sanderson v. State, 168 Ala. 109, 53 So. 109. In the case at bar, the evidence clearly shows the appellant recognized the deceased as a police

officer, and under provisions of § 155, supra, when an offense is being committed in the presence of an officer, he may make an arrest without informing the person as to the cause. The appellant, under the evidence, had used, and continued to use, profanity, insulting and obscene language before and during the altercation with the deceased officer which was in the presence or hearing of the female life guard and others, and in violation of § 11, Title 14, Code 1958, Recompiled. There was no error in refusing charges 8 and 11.

Refused charges 14, 26 and 28 for appellant deal with the question of murder being reduced to manslaughter when the killing is prompted by passion suddenly aroused by sufficient provocation.

Charge 14: The court charges the jury that if the killing is the consequence of passion, suddenly aroused, you cannot convict the defendant of murder in either degree. This charge is faulty since it omits the rule of the necessity of sufficient provocation for the existence of the passion aroused.

Charge 26: "A killing in sudden passion, excited by sufficient provocation, without malice, is manslaughter, not because the law supposes that this passion made the slayer unconscious of what he was about to do, but because it presumes that passion disturbs the sway of reason and made him regardless of his admonition," states an abstract principle of law and appears to be an exact copy of the language of the Supreme Court in commenting upon a charge in the case of Smith v. State, 83 Ala. 26, 3 So. 551.

Charge 26, is a copy of a statement of abstract law made by the court in Smith v. State, 86 Ala. 28, 5 So. 478 (the statement being made originally in Smith v. State, 83 Ala. 26, 3 So. 551, in the first appeal of that case). The vice in this charge in the case at bar is that it is not hypothesized on the evidence. This is pointed out in Wigerfall v. State, 17 Ala. App. 145, 82 So. 635. The charge should be hypothesized upon the evidence in the case in which it is requested.

Refused Charge 28: "The court charges the jury that if they believe from the evidence that there was sufficient provocation to excite sudden passion, then the presumption is that passion disturbed the sway of reason and made him regardless of his act, and the jury could not find him guilty of murder," is subject to the same criticism as directed to Charge 26, supra. The case of Miller v. State, 146 Ala. 686, 40 So. 342, cited by appellant as supporting this charge holds charge 4 similar in principle, to be good, but in that charge there is the phrase "and the defendant acted under such passion," which hypothesized the charge upon the evidence in that case and meets the objection noted in Wigerfall v. State, supra, Ala.Digest, Criminal Law, ☞814(3) supra.

Charge 28 in no way alleges that the defendant in this case was acting in such passion as a result of the circumstances in the case at bar. There was no error in its refusal. Lowery v. State, supra, Wigerfall v. State, supra.

We further think that the court, in its oral charge in defining manslaughter in the first degree, explained the rule as to killing in the heat of sudden passion aroused by sufficient provocation (p. 441 of transcript).

We have responded to matters included in brief and in addition, have carefully studied the record for error. Finding no error to reverse, this case is due to be affirmed.

The foregoing opinion was prepared by W. J. Haralson, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

Affirmed.

PRICE, P. J., and CATES, ALMON and TYSON, JJ., concur.