309 So.2d 475

**Phillip Robert ROYNICA**

**v.**

**STATE.**

**5 Div. 130.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1974.

Rehearing Denied Nov. 12, 1974.

John S. Glenn, Opelika, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

**440**

PER CURIAM.

The grand jury of Lee County returned an indictment (Tr. 106) against the appellant, an indigent, for murder in the first degree. The alleged victim was Burt Michael Froney. The jury returned a verdict for murder in the first degree with punishment therefor fixed at life imprisonment.

The same grand jury returned another indictment (Tr. 114) against the same appellant, Roynica, for assault with intent to murder Sharon Faye Froney, wife of the deceased. The jury convicted him of assault with intent to murder and fixed his punishment at twenty years imprisonment in the penitentiary.

Both indictments were tried together before the same jury. This procedure was by agreement of the trial court, the appellant and respective counsel.

Mrs. Froney testified for the state that she was a victim of knife wounds when her husband was killed by a knife assault. The testimony of Mrs. Froney was essentially the same as her testimony in the case of Connell v. State, 53 Ala.App. ——, —— So.2d ——. The opinion in the Connell case was released on May 7, 1974 and is now subject to review by the Supreme Court of Alabama. We will not repeat the testimony. If necessary, we will refer to her testimony in the instant case, but will not burden this opinion with a repeat of the testimony in Connell.

I.

■ Appellant, along with three companions involved in the alleged offense, was arrested in a California motel, pursuant to the mandate of a federal warrant charging the appellant and his companions with flight to escape prosecution in Alabama for the commission of a felony, namely, for the murder in the first degree of Burt Michael Froney. The warrant was issued pursuant to Title 18, § 1073, United States Code, Crimes and Criminal Procedure. This § 1073 reads as follows:

"Whoever moves or travels in interstate or foreign commerce with intent either (1) to avoid prosecution, or custody or confinement after conviction, under the laws of the place from which he flees, for a crime, or an attempt to commit a crime, punishable by death or which is a felony under the laws of the place from which the fugitive flees, or which, in the case of New Jersey, is a high misdemeanor under the laws of said State, or * * * shall be fined not more than $5,000 or imprisoned not more than five years, or both."

Appellant contends that the federal warrant was invalid for lack of probable cause; that his arrest thereunder was illegal and invalid, because it was premised on an invalid Alabama magistrate's warrant issued by the Circuit Judge of Lee County. (Title 15, § 399, Recompiled Code 1958). Appellant contends that the affidavit supporting the Alabama arrest warrant was conclusional.

The affidavit that supports the issuance of the flight warrant for the arrest of appellant (see Exhibit 20, Tr. 102) was made by Thomas J. McCrystle, an FBI agent. The warrant appears on page 101 of the transcript. This affidavit is based on information that Agent McCrystle received from Sheriff James Pearson of Lee County that on January 10, 1972, warrants were issued in Lee County for the arrest of appellant and his companions (listed by name) charging murder, a felony cognizable under the penal laws of Alabama. The agent's affidavit also states that individuals answering the description of the four individuals were observed hitchhiking on I–65, in the vicinity of Tulsa, Oklahoma.

We quote from United States v. Mayer, 22 F.2d 827, (3 Cir.) wherein that court quoted on page 829 as follows:

" 'On the question of probable cause, it is well established that the indictment itself, together with proof that the defendant is one named in it, is prima facie evidence of probable cause, but not conclu-sive evidence. Beavers v. Henkel, 194 U.S. 73, 24 S.Ct. 605, 48 L.Ed. 882; Benson v. Henkel, 198 U.S. 1, 25 S.Ct. 569, 49 L.Ed. 919; Hyde v. Shine, 199 U.S. 62, 25 S.Ct. 760, 50 L.Ed. 90; Greene v. Henkel, 183 U.S. 249, 22 S.Ct. 218, 46 L.Ed. 177; Tinsley v. Treat, 205 U.S. 20, 27 S.Ct. 430, 51 L.Ed. 689. * * * ' "

It further appears in the same case, which quotes United States v. Gault, No. 513, 271 U.S. 142, 46 S.Ct. 459, 70 L.Ed. 875, May 3, 1926, as follows:

" ' * * * referring to the committing magistrate: "He is not intended to hold a preliminary trial, and, if probable cause is shown on the government's side, he is not to set it aside because on the other evidence he believes the defendant innocent." * * * ' "

We hold that in the instant case, the United States magistrate, Mr. Denson, had a lawful right to act on Agent McCrystle's statement that the warrant for appellant's arrest, according to his informant Sheriff Pearson, had been issued and was outstanding. The information came from a reliable source, the Sheriff of Lee County, and the warrant, as in the indictment, was prima facie evidence of probable cause. We hold that under the circumstances, the flight warrant based, as it was on the state warrant, was valid and authorized the arrest of the four alleged fugitives named in the warrant.

However, it is said in State v. Ford, Mo.1973, 495 S.W.2d 408, that a flight warrant was itself probable cause for FBI agents to arrest appellant, and it was not necessary that the agent be possessed of all the information that was presented to the judicial officer at the time the warrant was issued.

There was no duty on the part of the federal magistrate to go behind the state warrant of arrest for murder and investigate the validity vel non of such state warrant, which, as we have already stated,

was prima facie evidence of probable cause.

## II.

The FBI agents in California acted on a teletype message from Alabama, which stated the appellant was wanted for unlawful flight to avoid prosecution for murder in Alabama. Having determined, supra, that the flight warrant was valid, the FBI officers had lawful authority to arrest appellant and his alleged partners in crime without physical possession of the flight warrant. Bowers v. Coiner, 309 F. Supp. 1064(7) (D.C.); Bartlett v. United States, 232 F.2d 135 (5th Cri. 1956); United States v. Donnelly, 179 F.2d 227 (7th Cir. 1950); Spurlin v. State, 46 Ala.App. 485, 243 So.2d 758, writ denied 286 Ala. 738, 243 So.2d 763; Gill v. U. S., 421 F.2d 1353, cert. den., 400 U.S. 851, 91 S.Ct. 85, 27 L.Ed.2d 89, rehearing denied, 400 U.S. 920, 91 S.Ct. 177, 27 L.Ed.2d 161.

## III.

When the FBI agents were making the arrest of appellant et al. in the motel room, to which they obtained lawful entry, they observed three knives, a black sheath and a pair of white boots. These knives, also some other articles, were in plain view of the agents and within reach of one or more of the fugitives. The seizures were incidents of the arrest of appellant. We have determined, supra, that the arrest was lawful and effected pursuant to the mandate of a lawful flight warrant issued in Alabama.

The state offered evidence of a sequence of possession relative to these articles and their unchanged condition. They were properly admitted in evidence as part of the res gestae of the alleged crime.

## IV.

Appellant objected to the introduction in evidence of the four flight warrants for the arrest of the appellant and his three companions (see Exhibit 20, Tr. 98–102). The ground of objection was that the exhibits were copies of the originals that had not been accounted for. There was competent testimony by Agent McCrystle and federal commissioner Denson that the copies were correct copies of the originals that were sent to an official custodian of the government. The original warrant was a public record. We quote from McElroy, Law of Evidence in Alabama, 2d Ed., Vol. 2, Key Note No. 218.02, page 150:

> " 'Proof of the content of the public record may be made by a copy thereof—at common law, by a sworn or examined copy; and usually, under a statute, by a certified copy. Miller v. Boykin, 70 Ala. 469, 478.

> " 'The term "examined or sworn copy" of a public record means a copy which a witness testifies was correctly copied by him from, or was compared by him with, the oridinal [sic] and found to be a correct copy of the original. 20 Am.Jur., Evidence, sec. 1038.' " Ex parte State of Alabama ex rel Attorney General, Petition for Writ of Certiorari to the Court of Criminal Appeals (Re: Thomas William Yelton v. State of Alabama) Opinion released August 8, 1974.

We think that pursuant to Yelton v. State, 293 Ala. ——, —— So.2d ——, and McElroy, supra, the copies were admissible.

## V.

Appellant complains of error in the admission in evidence of the contents of a teletype message sent by an FBI agent from his office in Opelika, Alabama, to the FBI office in San Francisco, directing the arrest of appellant and his companions pursuant to the flight warrant. It appears in the evidence that FBI agent McCrystle, a witness for the state, testified that he sent a teletype message to the FBI office in San Francisco in which he stated that the warrants had been obtained and issued

by a federal magistrate; that the warrants charged appellant and his companions with unlawful flight to avoid prosecution on a felony charge of murder; that the teletype requested that "these people" be apprehended. All of this evidence was adduced without objection thereto. Then followed:

"Q. Was anything said in the teletype about what precautions to take if they —"

Then followed appellant's objection that the teletype itself was the best evidence. No more evidence was adduced as to the contents of the teletype. The court overruled the objection. The objection came too late. It did not come until after the aforequoted question was answered. The witness had already testified as to the contents of the flight warrant. Ledlow v. State, 221 Ala. 511, 129 So. 282; Embrey v. State, 283 Ala. 110, 214 So.2d 567; Alabama Digest, Vol. 6A, § 693.

FBI agent Wolf, a witness for the state, testified in response to a question propounded by the state that he received a teletype informing him as follows:

"* * * four individuals were wanted for unlawful flight to avoid prosecution for the crime of murder somewhere in Alabama, I know it was in the Mobile Office territory of Alabama, and that warrants had been issued for their arrest."

The appellant objected prior to the answer on the grounds that the evidence was hearsay. He was bound by this ground. Henry v. Brown, 143 Ala. 446, 39 So. 325. The best evidence rule was not invoked. We do not think the court erred in its ruling, but, if so, it was error without injury. Agent McCrystle had already testified without timely objection as to the teletype which he had sent.

## VI.

Appellant complains that the trial court erred in overruling his objection to a question whereby state's witness Denson, the federal magistrate, was called on to state whether or not it was usual procedure for federal agents to arrest accused persons without warrants. The witness answered:

"A. I know that procedure insofar as arrest and that once a warrant is issued by a United States Magistrate, a teletype is sent out to the various FBI officers informing them that a warrant is outstanding and issued and they are authorized then to make an arrest."

Argument was made as to the effect of the question and answer:

"The effect on the Defendant was to create in the minds of the jury, and of the Court, the impression that the Defendant had been lawfully arrested."

We have ruled, supra, that the FBI arrest of the appellant and the companions was lawful. The question and answer were without injury to the appellant.

## VII.

Appellant's next contention asserts that the trial court erred in admitting in evidence a blouse (Exhibit 17) that Mrs. Froney was wearing when she was stabbed or cut, for which appellant was being tried on a charge of assault with intent to murder.

As we view the evidence, the blouse was in the same condition with the exception that some slits were made in the hospital emergency room to remove the blouse from the victim's person. The slits were inconsequential so far as the evidentiary value of the blouse is concerned. The jury was informed about the emergency necessity of a hurried removal of the blouse. These slits in our judgment did not detract from the evidentiary purpose of the exhibit. The ruling of the court was free from error.

## VIII.

Another assertion of error is addressed to the admission of State's Exhibit 28, namely, a photograph taken at the scene of the crime. This photograph was relevant and admissible. Cauley v. State, 33 Ala.App. 557, 36 So.2d 347(5), cert. den., 251 Ala. 163, 36 So.2d 354.

Exhibit 24, a photograph depicting the body of the deceased, was admitted in evidence over appellant's objection.

State Trooper Brown stated that he uncovered the body upon entering this trailer. State Exhibit 30, consisting of a photograph showing the lower part of the body and the rear of the camper from the inside, was admitted over appellant's objection.

Both of these exhibits, in our opinion, were admissible. Williams v. State, 255 Ala. 229, 51 So.2d 250; Alabama Digest, Criminal Law, Vol. 6, Key Note No. 438.

## IX.

It appears that a witness, Toxicologist Dale Bloomer, made an examination of some blood in a vial. He identified the fluid as human blood and Type A grouping. The blood came to this witness from Doctor Roper, who identified the blood as that of the deceased, Burt Michael Froney. This identification was admitted in evidence without objection and was sufficient to establish the source of the blood despite the inscription on the vial bearing the name of "Fortney". There was no error in admitting this testimony of witness Bloomer relative to the blood sample.

## X.

Appellant contends that the trial court erred in overruling his motion to require the District Attorney to produce a statement of the witness Chase, a companion in the crime, made to the FBI agent.

The District Attorney replied that Deputy Sheriff Ronnie Watkins had a copy of a FBI report given to Mr. Watkins in confidence by the FBI relative to Chase's violation of some federal law or statute.

We hold that the trial court had no authority to require the District Attorney to produce this report, which was not in his possession nor under his control, but given in confidence to the Deputy Sheriff.

## XI.

Mrs. Froney, the victim of the appellant's alleged assault with intent to murder, testified over appellant's objection, which was overruled, that she heard one of the four hitchhikers ask, after her husband was slain:

" 'Well, did you get his wallet?' And he said 'Yeah.' " This statement, timed as it was, formed a part of the res gestae and was admissible.

## XII.

Appellant asserts that the trial court erred in overruling his objection to the admission in evidence of certain articles belonging to others, which did not connect the appellant with the crime. These articles were:

(a) Driver's training certificate of Ronald-Keith Connell, an alleged accomplice in the murder;

(b) An Australian Bush Hat belonging to the alleged accomplice Connell.

These items tended to identify Connell as present when the crime was committed and were properly admitted in evidence. It appears from the appellant's testimony that Connell was present when the crime was committed. Also Chase, an admitted murderer of Mr. Froney, testified that Connell was present.

There was no error on the part of the court in failing to exclude these articles.

## XIII.

Witness Sharon Faye Froney, wife of the victim and herself a victim of several knife wounds at the hands of one of the four alleged murderers of her husband, testified, over appellant's objection and an adverse ruling with respect thereto, that she was under sedation at the time she gave the statement.

We note that the objection was made after the witness had answered in the affirmative. We will not review this ruling. Walker v. State, 265 Ala. 233, 90 So.2d 221.

## XIV.

The appellant took the stand as a witness for himself. The state cross examined him relative to a statement he made to FBI officers in San Francisco. This statement tended to impeach the appellant. It does not appear that the Miranda warnings were given but such warnings were not a prerequisite to such cross examination for impeachment purposes. Harris v. State of New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1. In the light of this decision, the court was correct in permitting the cross examination.

## XV.

Appellant next contends error on the part of the court in overruling his objection to the state's question to Mrs. Froney, if she noticed " * * * any unusual actions by any of these four individuals after they got into the trailer?" The objection was premised on the ground that the question called for a mental operation and a conclusion of the witness. Evidence of mental operations is admissible. Starr v. Starr, 293 Ala. 204, 301 So.2d 78, (Released September 12, 1974).

Mrs. Froney answered:

"A. I didn't notice anything strange about any of them. They were just nice, normal young kids."

In view of the answer, if the court's ruling was wrong, there was no injury to the appellant. However, this rule of exclusion as to mental operations is abrogated

## XVI.

Another contention is that the court erred in overruling appellant's objection to the state's question propounded to appellant on cross examination. We quote the question, objection and ruling of the court:

"Q. Isn't it a fact that you did come back there after you all had done in Mr. Froney, and Miss Jordan still had the knife on Mrs. Froney and at that time you pulled Mrs. Froney up off of the bed there, and stabbed her and pushed her into the bathroom?

"MR. GLENN: We object to this question, if it please the Court; the District Attorney has a right to lead, but he said 'after you all did in Mr. Froney and'—

"THE COURT: This is cross-examination and respectfully overruled."

We do not think the question was misleading or "loaded" as in Marsh et al. v. State, 16 Ala.App. 597, 80 So. 171. Even so, the appellant's answer coupled with answers to prior questions tended to establish that he was free of any involvement in the knifing of Mrs. Froney. The ruling of the court, if in error, did not result in any injury to the appellant.

## XVII.

The trial court, at the request of the state, exempted some of the state's witnesses from the rule of sequestration.

Counsel for the appellant admits that there is a long line of cases, almost endless in numbers, so he says, that authorized such exemption. However, appellant importuned this court to overrule these cases.

■ We adhere to the decisions of this court approving such exemption. We have no authority to overrule the cases of the Supreme Court. We are bound to follow them.

## XVIII.

■ Appellant complains that the trial court committed error in instructing the court reporter not to take down appellant's oral argument on the law with respect to a motion before the court. The court stated, when the ruling was made, that the court reporter "was worked to death."

We will not charge the court with error in giving such instructions to the court reporter. Title 7, § 262, Recompiled Code of Alabama 1958, does not mandate that the legal argument be reported. Oral argument on the law is sometimes reported, but such service is not mandated in Lee County.

## XIX.

■ Appellant claims error in the refusal of the court to give appellant's written charges 9, 11 and 13 in case no. 106, and charges 6 and 7 in case no. 114.

All of these charges are abstract. None was based on the evidence. The court did not err in refusing these charges. Slaughter v. State, 47 Ala.App. 634, 259 So.2d 840, cert. den., 288 Ala. 751, 259 So.2d 845; Alabama Digest, Vol. 6A, Criminal Law, Key Note No. 814(3).

## XX.

■ The next contention of error asserted by appellant relates to a statement, Exhibit 35, a waiver of rights, which appellant, after being recalled, admitted he had signed.

The FBI agent Wolf testified that, before the appellant made a statement, Exhibit 35 was read over to him and he also read the form and signed it. On further examination by appellant's counsel, the agent testified that he was not present when the form was read to the appellant and signed, but that Agent Schwab told him that the appellant signed the form. The colloquy resulted in the appellant being recalled to the stand, when and where he admitted that he understood and signed the waiver.

It appears to us that appellant's Miranda rights were adequately protected. We wish to note that Agent Wolf (Tr. 512) testified neither he nor anyone else in his presence or hearing offered appellant any reward or made any threats toward appellant to get him to make the statement.

We hold that the admission of the waiver in evidence was not error.

## XXI.

■ Further contention is made that appellant's fingerprints "taken while he was being illegally held in custody" should not have been admitted in evidence.

We have held, supra, that the appellant was lawfully arrested and the premise that he was in illegal custody is without merit.

## XXII.

■ The appellant asserts that the trial court erred in refusing to give appellant's affirmative charge in both case no. 106 and no. 114. We cannot agree with this contention. We have determined, supra, that the arrest of the appellant in California was lawful and the evidence seized at the time met the demands of law.

Appellant's companion at the time of the homicide was one Chase, who testified that he stabbed and killed Mr. Froney; that he stabbed Mrs. Froney. He exonerated appellant from any participation, accessorial or otherwise, in the two crimes and took full blame.

447

The appellant took the stand and likewise disclaimed any responsibility or participation in the two offenses.

The jury was authorized to consider all evidence and determine therefrom the guilt or innocence of the defendant, and was not bound to accept the exonerating evidence of Chase and the appellant. Chase had already pled guilty and been sentenced.

We stated in the case of Ronald Keith Connell v. State, 53 Ala.Cr.App. ——, —— So.2d —— which is now subject to review by the Supreme Court of Alabama, as follows:

"It appears to us from the evidence that this defendant, Connell, was huddled with the other two men in deep conference, which was a prelude to the knife attack on the victim; that the knife was wielded by one of these three men; that the defendant, Connell, was huddled over the victim with the other men when the victim pleaded to them to leave him alone, or words to that effect, and to take the motor vehicle and go ahead. It was at this time that the knife was being wielded and in such a manner as to cause the death of Mr. Froney.

"We hold that the jury could draw a reasonable inference from the secretive conference by the three men and their huddle over the victim that the defendant was an accomplice to the homicide."

The attack on Mrs. Froney occurred immediately following the fatal attack on her husband. The attacks were also closely related and interwoven, and the time of demarcation so thin between the two, we think that there was a continuing application of the original aid and encouragement existing in the first attack, namely, the attack on Mr. Froney, or that the jury could so find. The aid and encouragement overflowed and involved the appellant in the second attack, namely, on Mrs. Froney. In other words, all the evidence taken together supports the jury's verdict; that the appellant and his companions determined to rob and kill both Mr. and Mrs. Froney, cover up the crimes by burning the camper, and take flight from the scene of the crime.

The affirmative charges in both cases were correctly refused.

## XXIII.

Appellant's final assertion of error embraces the action of the court, after the state and appellant both had rested, in recalling the appellant to the stand. The action of the court was admissible and within the court's discretion. Orr v. State, 225 Ala. 642, 144 So. 867(1); Miller v. State, 21 Ala.App. 653, 111 So. 648(1).

We wish to state in conclusion that the record in this case is in three volumes and contains 586 pages. Appellant's comprehensive brief contains 314 pages of narration and 101 pages of propositions and argument. The state filed an excellent brief.

We have reviewed the entire transcript and have considered the arguments of both appellant and appellee. We have written to appellant's argument and contentions seriatim.

We have concluded that the trial court exercised much patience and effort in considering all objections and contentions of appellant. We compliment the court in its efforts to reach a fair determination of all issues presented at the trial.

We do not find that the court committed any prejudicial error. The judgment in each case, no. 106 and no 114, is due to be and the same is hereby

Affirmed.

CATES, P. J., and TYSON, HARRIS and DeCARLO, JJ., concur.

ALMON, J., not sitting.