153 So.2d 635

Luella Ethel CONRAD

v.

Chester T. CONRAD.

4 Div. 125.

Supreme Court of Alabama.

May 9, 1963.

Wm. B. Matthews, Ozark, for appellant.

Joe C. Cassady, Enterprise, for appellee.

PER CURIAM.

This is an appeal from a decree awarding a divorce to the appellee.

The appellee at the time of the hearing below had been stationed at Fort Rucker, in Dale County, Alabama, for about a year and ten months.

In the hearing below the appellee testified that he had been born and raised in New Jersey, and at the time of his entry into military service he was living in New Jersey.

He and complainant were married in New York in 1944, they both being in military service at the time. At the time of his marriage his address was Mason General Hospital, Franklin, Long Island, New York.

The appellee left the military service in 1947, and returned to where his wife was living in New Jersey. In 1950, he re-enlisted and has been in the regular army since that time.

The complainant, as she too admits, has refused to join him at any of the posts to which he has been assigned during his mili-

tary career, though quarters were available at some of them.

While on a tour of duty in Germany the appellee requested assignment to the Third Army Area, and upon return to this country, he was assigned to Fort Rucker.

Since coming to Fort Rucker the appellee, who is a master sergeant, has lived in barracks on the post. He testified he intended to remain in the army until his retirement, and he did not intend to return to New Jersey to live upon completing his military service.

The court sustained respondent's objections to a question addressed to complainant as to whether he intended to remain in Alabama indefinitely.

On cross examination the appellee testified he paid his Federal income tax from Fort Rucker, but he had never paid any Alabama income tax. He further testified he did not own any real estate in Alabama, nor had affiliated with any church in Dale County. He did, however, maintain a bank account in a Dothan bank.

The sole question presented in this appeal is the effect of Section 96(1), Title 7, Code of Alabama 1940, upon the acquisition of domicile in this State by military personnel stationed in Alabama, for purposes of jurisdiction in divorce actions. The above section reads as follows:

"Any person in any branch or service of the government of the United States of America, including those in the military, air and naval service, and the husband or wife of any such person, if he or she be living within the borders of the state of Alabama shall be deemed to be a resident of the state of Alabama for the purpose of maintaining any suit or action at law or in equity in the courts of this state. This section shall be liberally construed, and be given retrospective as well as prospective effect."

A number of other states have passed statutes aimed at creating domicile within the respective states for those persons stationed at military posts within their borders. Several of these statutes have provided that the military personnel should have served within the borders of the state for a specified length of time. For instance, Kansas requires one year. General Statutes of Kansas, 1949, Sec. 60–1502; New Mexico requires one year's service. See 1951 Amendment to Sec. 25–704, New Mexico St. at Large, 1941 Comp. Chap. 107, Laws of 1951; Texas requires a service of twelve months, with six months service within the county where the suit is filed. Vernon's Rev.Civil Statutes, Art. 4631 (55th Session of the Legislature); Nebraska requires a period of military service of one year, R.R.Statutes of Nebraska, 1943, Sec. 42–303.

The Florida statute on the subject is most similar to ours, in that no specified time of military service within the state is required. The Florida statute, Laws of Florida, Acts 1943, Chap. 21966, Fla.S.A., Sec. 46.12, provides:

"Any person in any branch of service of the government of the United States, including military and naval service, and the husband or the wife of any such person, if he or she be living within the borders of the state, shall be deemed prima facie to be a resident of the state for the purpose of maintaining any suit in chancery or action at law."

Divorce decrees granted military personnel under the provisions of the above mentioned statutes have been upheld in the jurisdictional aspect of required domicile, though concededly from different approaches.

In Wood v. Wood, 159 Tex. 350, 320 S.W. 2d 807, at 811, the Texas Court wrote in regard to jurisdiction in divorce cases under the Texas statute, supra:

"The State of Texas is hardly less concerned with the domestic relations

of persons required to live in this state indefinitely under military orders, oftentimes for a period of years, with the protection and support of their children and their property interests, and the adjustment of their marital responsibilities at stake than it is with the similar problems of those who have acquired a domicil here in the orthodox sense. In many cases, if not in the majority, the courts of this state only can deal adequately with these problems and afford appropriate relief."

The Supreme Court of New Mexico held that their statute created a conclusive presumption of domicile, and was not an unwarranted interference by the legislature with the judicial branch of government. The New Mexico court was further of the opinion that a new type of domicile was created by the Act, i. e., a "military" domicile, the court observing in this connection:

"We do not feel that the extension of the idea of domicile beyond the area of the integrity of individual intent to an area which might be called 'military domicile' in which individual intent has no place, is an extension which will appreciably weaken or disturb the traditional concept of domicile and the large body of fixed law resting thereon."

In upholding the Kansas statute, the Supreme Court of Kansas concluded that it must be assumed that the Kansas legislature knew that thousands of military personnel were assigned to military stations in Kansas, and that in all probability the establishment of a former domicile would be highly impractical for all parties concerned, and surrounded by insurmountable difficulties, with the result that for practical purposes military personnel would be outside the law for divorce purposes. See Craig v. Craig, 143 Kan. 624, 56 P.2d 464.

As before stated, the Florida act, supra, is more similar to our provisions than the statutes above mentioned in that no stated period of military service within the state is required. While our statute provides that military personnel "living within the borders of the State of Alabama shall be deemed a resident * * * for the purpose of maintaining any suit or action at law or in equity in the courts of this state * * *" the Florida statute provides that military personnel, if living within the state, "shall be deemed prima facie to be a resident of the state for the purpose of maintaining any suit in chancery or action at law."

In considering the effect of the Florida statute, and its probative impact upon the proof of domicile by military personnel living in Florida, the Supreme Court of that state in Mills v. Mills, 153 Fla. 746, 15 So. 2d 763, concluded:

"Although, as we have stated, the testimony of the appellant was not very clear on the matter of his intention to adopt Florida as the state of his residence, we cannot say that it was so deficient as to defeat the prima facie presumption of residence springing from the statements by him and his witness that he was in the military service of the United States and at the time living within the state.

* * * * * *

"It is our conclusion that the animus must still be proved and that since the passage of Chapter 21,966, supra, the plaintiff is aided by its provision that a man in the service living within the state is to be considered prima facie a resident. Bearing in mind this rule in his favor we cannot conclude that the appellant's testimony was so weak as to overcome the presumption and we do not, for the reasons we have already given, determine the constitutionality of the act."

While the Florida statute creates a prima facie presumption of domicile, our statute goes further and provides that military personnel living within this state shall be deem-

ed residents of this state. This difference in verbiage we think compels the affirmance of the decree rendered below.

Nor do we perceive that an affirmance of this decree could in any wise contribute to an encouragement by military personnel to use the courts of this state for the purpose of obtaining so-called "quickie" divorces. Military assignments are so incompatible with such a plan as to render it virtually non-existent.

This court has held that it is beyond the power of the legislature to confer jurisdiction to divorce merely on the presence of the parties before the court. Jennings v. Jennings, 251 Ala. 73, 36 So.2d 236, 3 A.L.R. 2d 662. Domicile is yet the basis for jurisdiction for divorce actions, and our cases on this point are too well understood to require citation.

Section 96(1), supra, does not attempt to take away this basis of jurisdiction, but merely creates a presumption of domicile from military residence, and permits military personnel living in this state to maintain suits at law or equity in the courts of this state. It cannot be gainsaid that the legislature has the power to determine who may use our courts and under what conditions.

For the reasons set forth above, it is our conclusion that the decree below is due to be affirmed.

Affirmed.

LAWSON, SIMPSON, GOODWYN, MERRILL and COLEMAN, JJ., concur.

HARWOOD, J., concurs specially.

HARWOOD, Justice (concurring specially).

While I concur in the conclusion that this judgment should be affirmed, I wish to set forth these additional views, with which a majority of my confreres are not in accord.

The appellee's efforts to testify as to his intentions to make Alabama his domicile were to a large extent prevented by the lower court's rulings, although there was some testimony along this line, weak in probative force, brought in without objection. In the light of the decisions of this court pertaining to the so-called "Rule of Exclusion" the lower court of necessity had to rule as it did. Even so, such testimony as did come in without objection, under the doctrine of Levy v. Levy, 256 Ala. 629, 56 So.2d 344, and Volin v. Volin, 272 Ala. 85, 128 So.2d 490, cannot be considered because of the above mentioned Rule of Exclusion prevailing in Alabama. See also, Lorillard v. Lorillard, 272 Ala. 380, 131 So.2d 707. This rule, prevailing in no other jurisdiction, is to the effect that the uncommunicated intention of a party is a matter of inference to be drawn from facts other than the testimony of the party, even though such intention be material to the issues. This rule has been the subject of considerable discussion, much of it critical. I see no need to again write to the subject, but refer those interested to a thorough analysis of the rule by Judge J. Russell McElroy in 1 Ala.Lawyer 221; Wigmore on Evidence, 3rd Ed., Sec. 1960; and the dissenting opinion authored by Chief Justice Livingston in McGuff v. State, 248 Ala. 259, 27 So.2d 241. As demonstrated by the above references, the Rule of Exclusion is so glossed by exceptions, many being distinctions without a difference, as to render well nigh impossible the application of the rule with any degree of certitude.

As it exists today the Rule of Exclusion is nothing more than a jurisprudential will o' the wisp whose dim and evanescent light serves only to lead lower courts into the mire of reversal. Those adhering to the rule do so on the basis that it has been in our law too long and recognized in too many cases to now repudiate it. Judge McElroy has demonstrated that the rule was conceived in error. The writer does not adhere to the view that stare decisis envisions the perpetrations of erroneous and un-

workable legal ipse dixits, and would extirpate this jurisprudential booby trap from our law once and for all.

Regardless of this total extirpation, the rule should certainly be extirpated insofar as its invocation prevents the testimony of a member of the armed forces seeking to establish the place of his domicile. Intention of the party is the sine qua non in showing domicile. The opportunities of one in the armed services is too hemmed about to ordinarily show this intent by objective evidence.

LIVINGSTON, C. J., concurs.