301 So.2d 78

**William Cecil STARR**

v.

**Floyd T. STARR, Sr.**

**SC 291.**

Supreme Court of Alabama.

Sept. 12, 1974.

Rehearing Denied Oct. 3, 1974.

Harry D. Raymon, Tuskegee, for appellant.

Samford, Torbert, Denson & Horsley, Opelika, for appellee.

**FAULKNER, Justice.**

This case involves a will contest tried in the Circuit Court of Lee County.

On April 1, 1971, Floyd T. Starr propounded for probate the will of his deceased wife, Eva Silavent Starr. Under her will the personal property was left to Floyd Starr, her husband. Her real property was left equally to her husband and her son, Floyd Terry Starr, Jr. Prior to probate of the will, William Cecil Starr, another son of Mrs. Starr, filed a contest on the grounds that (1) the will was not properly executed because one of the witnesses supposedly did not see Mrs. Starr

sign the will and that she did not acknowledge a previous signature; (2) undue influence by Terry Starr and Floyd T. Starr, Sr.; and (3) unsound mind.

The proponents of the will presented evidence that Cecil Starr was "disinherited" because of an earlier agreement between Mr. and Mrs. Starr. The agreement provided that Mrs. Starr would leave her property to Terry and her husband, and her husband upon his death would leave all of his property to Cecil. Her motive in giving her husband one-half of the real property was to take advantage of the maximum marital deduction under the provision of the Internal Revenue Code. It was felt that in this way the division could ultimately be equalized, as both parents owned property. Also, Terry and Cecil had a history of conflict, and it was believed that any joint ownership of property by them would be ill-advised. On February 5, 1973, the case was tried before a jury, and a verdict was rendered in favor of the validity of the will. The appellant appeals from that judgment.

Assignments of Error One, Two and Five are similar in nature and deal with the court's sustaining objections to the following questions asked by Cecil Starr at various times of the witness Floyd Starr, Sr., while on cross-examination:

1. "Mr. Starr, have you made a will?"

2. "Have you made any will in conformance with any tax plan relative to your wife's estate and your estate?"

3. "You ever make one—make a will prior to her death?"

4. "Have you made any will at any time in conjunction with your wife's will to try to take advantage of any estate tax planning?"

5. "Did you prepare any instrument that would carry out your part of the plan?"

The basis of objection in all of the instances above was that such questioning was not relevant to the issues of the case, in spite of earlier testimony by the proponents of the will concerning the supposed plan of distribution worked out by Mr. and Mrs. Starr prior to her death. The question is then one of whether Mr. Starr's lack of a will would logically infer the fact that a plan had not been agreed to by the Starrs. This could have been the only purpose of such interrogation by Cecil Starr. Numerous tests of "relevancy" have been enunciated in an effort to deal with the problem of when a certain piece of evidence is probative and hence admissible. One standard test is whether the evidence offered renders the desired inference more probable than it would be without the evidence. McCormick on Evidence, p. 437 (2d Ed.). While the fact that Mr. Starr had no will at the time of trial normally would be something for the jury to consider, it does not of necessity negative the fact that an agreement could have been reached as to the ultimate disposition of the spouse's property. On cross-examination, the test of relevance is generally given a wider latitude than on direct. It is recognized that the trial judge has great discretionary power in controlling the extent of examination and will not be reversed save for abuse resulting in substantial harm to the complaining party. Bates v. Chilton County, 244 Ala. 297, 13 So.2d 186 (1943). We do not believe there was any prejudice to the appellant in any of the above instances. Even though the evidence may have been technically relevant, Cecil Starr himself objected to a similar line of questioning of Mr. Starr by Floyd T. Starr, Sr., and the objection was sustained.

"Q. All right, sir. Do you have a will?

"A. No, sir, I don't have one.

"Q. Have you had a will since she died?

"A. Yes sir, I had a will made.

"Q. What did that will provide.

"MR. RAMON: We object, if it please the Court.

"MR. SAMFORD: Well, we don't insist on that.

"THE COURT: Well, Mr. Raymon was asking that same question. I'll have to sustain that objection."

Some of the appellant's questioning occurred before and some after the above interchange. Cecil Starr could have known what he wanted to know about Mr. Starr's will had he not objected and cut off the testimony. Prejudicial error should not be predicated on grounds such as these. There can be no error for the admission of evidence which has been admitted without objection at some other stage of the trial. Harvey Ragland Co. v. Newton, 268 Ala. 192, 105 So.2d 110 (1958). The spirit of this principle should apply to the issue now before us. The parties may try their case totally on illegal evidence—if both sides choose not to object at the appropriate time. This court considers on appeal, only adverse rulings of the trial court. Presumably then, the parties may choose to try their case without the benefit of evidence which might otherwise be relevant and proper, when they both object to the same type of evidence, elicited from the same witness.

Assignment Number Four deals with supposed error in the court's overruling of an objection to the following question asked of Mr. Floyd T. Starr, Sr.:

Q. "Is it your intention to carry out the plan of distribution of the family property that you and Mrs. Starr arrived at?"

Cecil Starr states that it is a long standing rule in this state that one can not prove by a witness *on direct examination,* his intent, motive, or other unexpressed mental operation. The appellant cites us to Low v. Low, 255 Ala. 536, 52 So.2d 218 (1951). In this case the trial court allowed a wit-

ness to testify on direct examination as to whether he had the intention of delivering a deed to the grantee at the time of executing it. This court reversed because we could not say with certainty that the " . . . illegal evidence with respect to his undisclosed intention did not affect appellant's substantial rights . . . " Numerous other cases have parroted the same general proposition that a witness may not testify as to his undisclosed intention or the uncommunicated intent of another. See Armour & Co. v. Cartledge, 234 Ala. 644, 176 So. 334 (1937) and cases cited therein. This rule has been criticized by text writers. McElroy, The Law of Evidence in Alabama, Vol. 3, § 290.01(9)(a). Judge McElroy refers to it as a "bizarre general rule" and indicates that it had its inception because it was felt that testimony given in response to such a question was "insusceptible of contradiction." Alabama Fertilizer Co. v. Reynolds & Lee, 79 Ala. 497 (1885). Members of this court have also taken the so-called "rule of exclusion" to task. Justice Harwood said this about it in his opinion in Stegall v. Wylie, 291 Ala. 1, 277 So.2d 85 (1973):

> "This rule prevails in no other jurisdiction. Unworkable since its origin, the rule is now so glossed by exceptions, many being attempted distinctions without any real differences, that its application is impossible with any degree of certitude.
>
> \* \* \* \* \* \*
>
> "In Conrad v. Conrad, 275 Ala. 202, 153 So.2d 635, in a special concurring opinion, this writer expressed the view that our Rule of Exclusion was nothing more than a jurisprudential will o' the wisp whose evanescent light served only to lead lower courts into the mire of reversal, and that it should be totally extirpated. He was joined in this view by the late Chief Justice Livingston."

See also McGuff v. State, 248 Ala. 259, 27 So.2d 241 (1946) (dissenting opinion by the late Chief Justice Livingston). Apparently the "rule of exclusion" first got its name in an article written by Judge McElroy in 1940 for the *Alabama Lawyer*. McElroy, "Admissibility in Alabama of a Witness' Testimony to His Own Intent or Other State of Mind," 1 Ala. Lawyer 221 (1940). In this article Judge McElroy traces the beginnings of the rule by chronicling the early cases that gave it birth. He writes that in dealing with the rule Dean Wigmore stated that " . . . there is no precedent for it in the inherited common law; it is an attempt to create a rule without an analogy in the accepted doctrines of judicial rulings." Wigmore on Evidence (3rd Ed.), § 581. To say that such testimony is "insusceptible of contradiction" assumes the total nonexistence of any available counter-evidence which could be offered by the opposing party. In his conclusion Judge McElroy states:

> "It is unwise to maintain any such utterly irrational restriction against the normal, natural way of interrogating witnesses. Nearly every trial sees many objections under this rule, with the inquiry, in consequence of the objection, being diverted into laborious, tedious, unnatural and circuitous channels. Our decisions concerning the rule of exclusion are in a state of unmanageable confusion. The rule of exclusion had its genesis in a generation long past. The rule's disservice is now palpably manifest. No intelligent person can read Inter-Ocean Casualty Company v. Stallworth, Kinsey v. State, and many other decisions flatly ignoring the rule, and read the decisions creating the exceptions, without sensing a feeling in the judges of our later days that the rule of exclusion is an abomination in the quest for truth, and that they would like to be rid of it."

▮ Mr. Starr's testimony was treated by the parties as being both material and relevant to the issues, and we will so treat it. The existence of the plan for disposition of the spouse's property runs through a great part of this will contest. Earlier

in the trial, testimony as to the contents of Mr. Starr's will was objected to and thus excluded. This question called for the only other evidence which would indicate a plan was or would be carried out. The question was one which would undoubtedly cause us to reverse if we were to adhere to the rule which has been followed in one form or another for the last one hundred years. This is not an instance where Rule 45, Supreme Court Rules of Alabama will provide an exit because if believed by the jury, the testimony could have had a substantial impact on the contestant's case. This of course presupposes that the jury was first convinced that the plan in fact existed. We therefore depart from the past and follow the dictates of conscience and the wisdom of noted writers and other members of this court. We now hold that a witness, on direct examination, may testify as to his intention, motive or other physically unexpressed mental state, *provided* that the testimony is material to the issues in the case. This is another area where the sound discretion of the trial judge will come into play. Thus we will not review the court's ruling in either admitting or excluding such evidence in the absence of abuse. To the extent Low v. Low and other cases conflict with this point, they are hereby overruled.

■ Assignment Three deals with the overruling of an objection to an unresponsive answer given by the attorney who drafted the will of Mrs. Starr. In his answer he talked about the property—"which his mother had intended to go to him as a part of her overall plan"—speaking of Terry Starr. It is obvious upon reading the record that the attorney was testifying not as to Mrs. Starr's actual intention, since he never talked to her, but her intention as relayed to him by Terry Starr, who was the only member of the family the attorney ever dealt with in this matter. The trial court cleared this up immediately, and certainly no one was misled. Additionally, the appellant objected not when the question was asked, but when the answer was given. It was then encumbent upon Cecil Starr to move to exclude or strike the objectionable part of the answer if he hoped to obtain any review of the issue. This he did not do and he is thereby precluded from now raising the problem. Strickland v. Strickland, 285 Ala. 693, 235 So.2d 833 (1970).

In Assignment Six appellant cites as error the overruling of an objection to a question asked of Floyd Starr, to the effect of what bearing the outcome of the present suit would have on the disposition of his property. Cecil Starr argues that the question is one which calls for testimony of intention, or unexpressed mental operations. If that were true, what we have said earlier in this opinion would apply to this instance as well. Since the question was asked by the court itself, there can be little question that it was considered to be material. The outcome of the suit would have a definite effect on the property which Mr. Starr would ultimately have in his estate at death. If the will were declared invalid, then Mrs. Starr's real property would go totally to the two sons via the law of intestate succession. Therefore, the outcome of the will contest would determine exactly what property he himself had to pass by will or gift. It seems the question was directed to a statement of fact rather than one of intention. The overruling of the objection was not prejudicial error.

We find no reversible error in Assignment Seven because once again, the appellant failed to object until after the answer was given. One can not speculate on the answers to his opponent's questions. There can be no error for the overruling of an objection that comes too late. Coker v. Ryder Truck Lines, 287 Ala. 150, 249 So.2d 810 (1971); Meriweather v. Crown Investment Corp., 289 Ala. 504, 268 So.2d 780 (1972).

Assignment 8 states that the trial court erred in giving a written requested

charge offered by Floyd Starr. It is contended that the charge was both erroneous and misleading on the question of confidential relationship relative to proving a case of undue influence. We note that Cecil Starr finds no fault whatsoever with the trial court's oral charge on this point. Also the court gave at the request of the appellant, two written charges which covered this same point, both as to Terry Starr and Floyd Starr. The disputed charge read to the jury stated the following:

"I charge you that the fact, if it be a fact, that there was a confidential relationship existing between Mrs. Eva Silavent Starr and her son, Terry Starr, and that Terry Starr, by going to the attorney who prepared Mrs. Starr's will and discussing the preparation of this will with said attorney, does not of itself raise any presumption of undue influence nor does it place upon Mr. Floyd Starr, the Proponent of the will, the burden of showing there was no undue influence."

Cecil Starr states this is an incorrect statement of the law and contra to our decision in Gaither v. Phillips, 199 Ala. 689, 75 So. 295 (1917), and others following it. On the other hand, Floyd Starr counters with the fact that the above charge is almost taken verbatim from a charge approved in Park v. Whitfield, 210 Ala. 18, 97 So. 68 (1923). This however carries little weight. Hatcher v. Camp, 279 Ala. 475, 187 So.2d 232 (1966). The overriding question is whether or not there is to be some special consideration for a confidential relationship which exists between a parent and child. The *Park* case indicates that in their normal continuing relationship, the parent is presumed to be dominant to the child. Thus in the making of a will, there will be no presumption of undue influence solely because the child had some part in the procuring of the will or took an active part in the preparation. The parent is still considered the dominant party. However, this situation is not an immutable one.

This was recognized in Raney v. Raney, 216 Ala. 30, 112 So. 313 (1927):

"So, we think it may be said that, ordinarily, the dominance of the will of the parent in will cases will be presumed to continue despite family association or business connection. But when old age weakens the physical and mental powers of the one, and full maturity brings strength to the other, when the parent comes to lean upon the child for counsel, leadership, the conduct of his affairs, the making of a home, it may come to pass, and the law so recognizes, that the natural order may be reversed, and the will of the parent pass under the dominant will of the child."

The facts tend to show that Mrs. Starr was a self-reliant woman who had a personal involvement in various facets of the business world. Nothing in the least indicates that she normally relied on Terry Starr to handle her business or personal affairs. In the drawing of the will, she had little choice because she was under treatment for a debilitating lung cancer, which in fact caused her death three months after the execution of the will. As a general rule, the showing of a confidential relationship coupled with activity surrounding the will tending to favor a certain beneficiary creates a presumption of undue influence. When the relationship is one of parent and child, and thus confidential by its very nature, the question of the child's dominance should require a closer scrutiny in accordance with *Raney* and *Parks*. If the charge was misleading, it was incumbent upon Cecil Starr to request further explanatory charges at that time. This was not done and no reversal will be made. Horace v. VanBlaricon, 291 Ala. 530, 283 So.2d 421 (1973); Woods v. Laster, 291 Ala. 139, 279 So.2d 121 (1973); Swindall v. Speigner, 283 Ala. 84, 214 So. 2d 436 (1968).

 Assignment Nine cites error for the failure to give a written requested charge offered by Cecil Starr dealing with

the legal requirements for the proper execution of a will. He claims the charge was taken verbatim from Little v. Sugg, 243 Ala. 196, 8 So.2d 866 (1942). This fact is not controlling. See *Hatcher,* supra. It is claimed that the charge is an incorrect statement of the law because the word "and" was substituted for the word "or" as it originally appeared in *Little.* We are not convinced that the word play completely changes the thrust of the charge. Nevertheless, the whole issue was adequately covered by the trial court's oral charge and there can be no reversal for refusing the requested charge. Supreme Court Rule 45, Boise Cascade Corp. v. Lee, 291 Ala. 666, 286 So.2d 836 (1973); Central of Georgia Ry. Co. v. Steed, 287 Ala. 64, 248 So.2d 110 (1971); Title 7, § 273, Code of Alabama 1940, Recompiled 1958.

Affirmed.

HEFLIN, C. J., and MERRILL, HARWOOD, BLOODWORTH, MADDOX, McCALL, and JONES, JJ., concur.

COLEMAN, J., dissents.