DeCARLO, Judge.
This is an indigent appeal from a conviction of assault with intent to murder where a ten-year sentence was imposed.
The scene of this offense was the Sidekick Social Club in Prichard, Alabama.
About 3 A.M., on March 8, 1975, Officer T. C. James of the Prichard Police Department received a call that there had been a shooting at the Side-kick Club. On his arrival he found Margarite Griffin had been shot and was told that Robert Louis Mason, the appellant, did the shooting. He went outside and saw the appellant standing near a taxi occupied by a passenger, Ernestine Finney. The appellant was arrested and taken to the police station.
Margarite Joyce Griffin testified that on March 8,1975, she was in the Side-kick Club and had been there about one hour. She had one drink and was alone. After she completed her drink, the appellant came in and asked several times to speak with her. She consented and went to the foyer of the club with him. Appellant “fussed” at her and said she had “hoodooed” him.
During the time appellant was talking, the witness said he kept his hand in his pocket. Finally she remarked, “Let me go back . . . I’m fixing to go back inside.” At that point, Mason pulled her “back around” and shot her in the stomach. She fell to the floor and was subsequently taken to the hospital.
On cross-examination, Margarite Griffin admitted she had gone with appellant for about five years and had borne him a child. She explained that three months before, she had “broken up with him.”
The only testimony presented by the defense came from the accused after a motion to exclude had been overruled.
Robert Louis Mason testified he was a preacher and evangelist whom God had called to the ministry on Father’s day. He stated at the time of his “call”, God anointed his hand so he could break the “yoke of bondage.” According to Mason, the yoke of bondage was witchcraft and he had been bound by it for five years.
Mason said he had been a truck driver and when he came off the road, the “call” came. He stated he was a member of the “Endtime Revival Church” and was presently working on “witchcraft, drugs and . preachers . . .” The appellant remarked that people in Searcy Hospital at Mount Vernon and Mobile General Hospital had died and were dying from witchcraft. Further, he said people on the seventh floor of Mobile General were not crazy but were only “bound by demon spirits.”
*96 Mason stated he lived with Margante Griffin for five years and they had one child. He explained that he left her five months before, after “Reverend J. E. Lowery laid hands on me to break the yoke of bondage . . . ”
On the day of the shooting, Mason said he had gone in the club to purchase a beer for his taxi passenger. When he saw Margar-ite Griffin he went over and asked her to come outside. She was with “some individual fellow” at the time. Once they stepped to the side, Mason said he asked why she was “putting my son in bondage;” she replied, “. . . good luck to you and I hope your son good luck.” At that point a fellow named Charlie came out behind Mason with his hand in his pocket. Appellant said the fellow had his “buddies” inside and, “. . . he was going to either do it to me or her.”
Appellant admitted he shot Margarite Griffin with a gun he had in his pocket. He said he was aware guns kill people but remarked, “witchcraft can kill.” Mason stated he did not know whether the victim had a gun but that she had a pocketbook.
No other testimony was presented and the case went to the jury on the outlined facts, appellant’s pleas of not guilty and not guilty by reason of insanity, and the court’s oral charge. The jury subsequently found the appellant guilty and sentence was pronounced in accordance with the verdict.
On February 10, 1976, appellant wrote a letter to this court which we have interpreted to be a pro se brief. In that letter he contends the Prichard police officer lied on two occasions during the trial.
In view of our responsibility under T. 15, Section 389, Code of Alabama 1940, Recompiled 1958, we have searched this record for error. Our review involved each of the court’s rulings adverse to this appellant and due to the fact error was present, only that point will be discussed here.
During the direct examination of the appellant, defense counsel asked:
“Q Did you mean to kill her?
“A No sir.
“MR. VALESKA: We move to strike that last answer. That invades the province of the jury.
“THE COURT: Strike his last answer. That’s for the jury to determine.
“MR. VALESKA: Would Your Honor instruct the jury that they are .
“THE COURT: Gentlemen of the jury, disregard his statement what he intended. That’s for you to determine under all the circumstances of the case. Go ahead.”
This court in a majority opinion wrote to this precise question in Grimes v. State, 56 Ala.App. 439, 322 So.2d 729. In that opinion, Judge Simmons, S. C. J., reviewed the Alabama Supreme Court’s holding in Starr v. Starr, 293 Ala. 204, 301 So.2d 78, and quoted from that opinion. The significant portion we now quote:
“ ‘. . . We now hold that a witness, on direct examination, may testify as to his intention, motive or other physically unexpressed mental state, provided, that the testimony is material to the issues in the case. This is another area where the sound discretion of the trial judge will come into play. Thus we will not review the court’s ruling in either admitting or excluding such evidence in the absence of abuse.’ ” (Emphasis ours.)
Bound by this foregoing pronouncement by our Supreme Court in Starr, supra, and the subsequent holding by this court in Grimes, supra, we have no recourse but to reverse.
REVERSED AND REMANDED.
TYSON, HARRIS and BOOKOUT, JJ., concur.