Willie Frank Reese, indicted April 8, 1975, for robbery, was tried by a jury on April 21, 1975, and convicted; thereby receiving a sentence of ten years in prison. He now appeals from his conviction.
 I
The State's essential evidence was the testimony of the victim, Mrs. Ramsey Brown, who identified the Defendant as the one who robbed her at her store on October 10, 1974. Other than the in-court identification, Mrs. Brown had picked out the Defendant's picture from a group of six pictures presented to her the day after the robbery on October 11, 1974. In addition an automobile fitting the description of the one driven away from the scene of the crime was traced to the Defendant.
The Defendant contended that he did not commit the crime, was not at the place of the crime at the time it occurred, that he had never been to the particular locality, and offered testimony other than his own that he was at another place, miles away, at the time the crime allegedly occurred.
 II
The Defendant argues three main assignments of error. The first derives from a question propounded a character witness for the Defendant, who was also Defendant's grandmother. The witness testified to the good character of the Defendant and then the following question was asked by Defendant's attorney:
 "Does the fact that you're his grandmother cause you to alter any of your testimony which you've made today?"
The State's objection to the question was sustained and this ruling of the Court constitutes the Defendant's contention of error.
Both the Defendant and the State agree that the landmark case of Starr v. Starr, 293 Ala. 204, 301 So.2d 78, is the latest authority on the subject of allowing a witness to testify to his mental state. The difference of opinion is in application. The Defendant contends that the question is permissible under Starr, and the State, with *Page 497 
most impressive erudition, distinguishes the Starr case from the instant case.
Considering the decision in the Starr case most favorably for the Defendant here, and assuming that the witness would have answered in the negative (also favorable to the Defendant), the Defendant's case would be strengthened very little and most likely not at all by allowing the question. The witness was in fact the grandmother of the Defendant and to think that the jury might find the witness more credible or less likely to be guilty, if the grandmother is allowed to personally assert that this relationship to the Defendant would not influence her opinion of him, is absolutely absurd. Besides, the question as worded does not make sense. We are assuming something it does not say. The witness, grandmother, has testified that the Defendant has good character. Now the defense asks her if, because she is the Defendant's grandmother, she wishes to alter her testimony. We all have assumed, perhaps, that the Defendant's attorney meant to ask a question similar to the following:
 Does the fact you're his grandmother cause you to testify as you have? or If you were not his grandmother, would your testimony be the same?
And even if we give the question, as worded, the meaning intended and apply the holding of the Starr case, we believe that the question is still objectionable. In the Starr case, referring to a witness testifying to his mental state, the court stated that a witness could do so, "provided (italicized) that the testimony is material to the issues in the case". The witness, grandmother, was allowed to give material testimony which related to the Defendant's good character. The other testimony sought and rejected could hardly be considered material. And the Court goes further to say:
 "This is another area where the sound discretion of the trial judge will come into play. Thus we will not review the court's ruling in either admitting or excluding such evidence in the absence of abuse."
This Court finds no abuse of discretion on the part of the trial judge in rejecting the question. It is also worthy to note that the witness did testify as to her mental state regarding the Defendant. The testimony of his good character is an opinion, which itself is no more or less than an expression of a mental state. The question objected to related to why the witness (the grandmother) thought as she did. Even Starr and later Roynica v.State, 54 Ala. App. 436, 309 So.2d 475, certiorari denied 293 Ala. 772, 309 So.2d 485, does not go that far. In Starr it was a question of an intention to carry out a plan. In Roynica it was whether or not the witness "noticed" something or other. In neither case, did the court say the witness should be allowed to state why he or she had such an intention or noticed such and such. The court did hold that a witness could testify as to "motive", which does get to the "why" of things. Yet motive we associate with an act rather than a thought. Hence the disallowed question propounded the witness in the instant case would go so far into the workings of the mind that it would be difficult to separate a reasonable mental state from fantasy or surmise. Therefore, the question for the several reasons mentioned was properly refused.
 III
The next specification of error presented by the Defendant is founded mostly in the Alabama constitutional provision that an ". . . accused has a right . . . to have compulsory process for obtaining witnesses in his favor; . . ." Alabama Constitution, Article 1, Section 6, Code of Alabama of 1940, Vol. 1, Recompiled 1958 (as amended). The facts relied upon in support of this assignment were elicited at the trial out of the presence and hearing of the jury. Defendant issued a subpoena on the day of the trial for Mr. Ramsey Brown, husband of the robbery victim, Mrs. Ramsey Brown. The Sheriff did not serve the subpoena. The Defendant attempted to show by a witness, Arthur Harris, that within fifteen or twenty minutes after the robbery he appeared at the *Page 498 
scene and that the husband stated to him that he had shot a hole in the robbers' automobile and that the automobile, which he saw, was brown or beige in color. The automobile traced to the Defendant, of course, was white with a black top and did not have a bullet hole in it. The court sustained an objection to the testimony of witness, Harris, in this regard and would not require the Sheriff to bring in Mr. Brown, either by subpoena or attachment. The Court did allow the Sheriff to testify that the witness, Brown, was in a nursing home only three blocks away, but that in his opinion he was neither mentally nor physically competent to testify. The Sheriff was also allowed to testify that on the day of the robbery, the witness was incompetent. Other testimony of the Sheriff was that he had known Mr. Brown all of his life and most recently had seen him within three or four weeks of the trial. It is well established law that upon proper predicate a layman can testify as to his opinion of the mental condition of another at a particular time. For what it was worth the Sheriff's testimony was admissible. Certainly the testimony of the witness, Harris, as to what Mr. Brown told him was hearsay and does not become admissible by any exception to the rule governing such. It would be a much stronger contention for the Defendant if the Defendant's attorney had attempted to ascertain Mr. Brown's condition far in advance of the trial, either in person or through testimony, expert or otherwise, of someone at the nursing home where Mr. Brown resided. Certainly the defense was aware very early in the proceeding that Mr. Brown arrived at the scene of the robbery within minutes or even seconds after it occurred. It was even known that he shot at the departing automobile. Apparently, however, the defense did nothing to contact Mr. Brown and try to determine what he knew about the case before the day of trial. Even the Sunday afternoon immediately before the day of trial, when the Defendant's attorney learned of Arthur Harris's testimony, was not too late for the attorney to ascertain the condition of the witness, Mr. Brown. The Alabama Constitution states that an accused has the right to compel the attendance of witnesses "in his favor" at his trial. That the witness, Brown, would testify in the Defendant's favor was not established at all.
The Defendant tried two or three times to question Mrs. Brown about what her husband may have told her about his shooting the automobile. Objections by the State initially to these questions were sustained. Eventually, however, the State decided it also wished for Mrs. Brown to answer this question, but the court still would not allow it. The answer to such a question would undoubtedly be hearsay. The court wisely in both instances, Mrs. Brown and Arthur Harris, prohibited such questioning.
The Defendant failed to timely request the attendance of the witness, Mr. Brown, at the trial and failed either to make a showing that the testimony of the witness would be favorable to the Defendant or that the witness was competent, mentally and physically, to testify. As to the requirement that an attachment or subpoena must be requested in timely fashion, see Forrester v.State, 41 Ala. App. 654, 148 So.2d 251. In view of these omissions the trial court did not err in refusing to require the witness, Mr. Ramsey Brown, to appear in court.
The case of Terry v. State, 120 Ala. 286, 25 So. 176, cited by the State as authority for not requiring a witness to appear upon a showing that the witness is sick is not applicable here. Had the State in the Terry case not stipulated with the defense as to the testimony of the sick witness, it would most likely have been error not to have granted a continuance of the case upon motion of the Defendant. Terry, supra, at 178.
 IV
We are next brought to the refused written charges requested by the Defendant and which he cites as error. These are as follows:
6. The court charges the jury that the law presumes the defendant innocent of the *Page 499 
indictment, and this presumption continues to go in favor of the defendant until the evidence convinces the jury, beyond a reasonable doubt of his guilt; and you cannot find the defendant guilty of any offense charged in the indictment until the evidence in the case satisfies you beyond all reasonable doubt of his guilt, and you cannot find the defendant guilty of any offense charged in the indictment until the evidence in the case satisfies you beyond all reasonable doubt of his guilt, and so long as you, or any of you, have a reasonable doubt as to the existence of any of the elements necessary to constitute the offense you should not find the defendant guilty.
7. The court charges the jury that the law presumes the defendant innocent of the indictment, and this presumption continues to go in favor of the defendant until the evidence convinces the jury, beyond a reasonable doubt of his guilt; and you cannot find the defendant guilty of any offense charged in the indictment until the evidence in the case satisfies you beyond all reasonable doubt of his guilt, and you cannot find the defendant guilty of any offense charged in the indictment until the evidence in the case satisfies you beyond all reasonable doubt of his guilt, and so long as you, or any of you, have a reasonable doubt as to the existence of any of the elements necessary to constitute the offense, you should not find the defendant guilty.
8. The presumption of innocence attends the accused as a matter of evidence, and is sufficient in itself to authorize the acquittal of defendant, and, to displace this presumption of innocence, the state is required to offer evidence that convinces you beyond all reasonable doubt as to the guilt of defendant.
10. It is the duty of the State to prove every material fact charged in the indictment to a moral certainty, and to satisfy the mind of the jury of the defendant's guilt beyond all reasonable doubt, and if they have failed to do this, and the jury can account for the defendant's innocence upon any reasonable hypothesis, in view of all the evidence, then they should find him not guilty.
14. The court charges the jury that if the evidence for the State consists of testimony as to the truth of which the jury have a reasonable doubt, the jury must not convict the defendant although they may not believe the testimony of defendant's witnesses.
17. The humane provision of the law is, that there should not be a conviction upon the evidence unless to a moral certainty it excludes every other reasonable hypothesis than that of the guilt of the accused. No matter how strong may be the facts, if they can be reconciled with the theory that some other person may have done the acts, then the guilt of the accused is not shown by that full measure proof which the law requires.
18. The court charges the jury that the law presumes that the defendant has testified truthfully in this case, and that it is your duty to reconcile his testimony and the testimony of all the other witnesses in the case with the presumption that he is innocent, if you can reasonably do so.
19. I charge you that if defendant was at another place at the time of the robbery, he should be acquitted, where evidence was introduced tending to establish an alibi.
27. Good character itself is part of the evidence in this case, and if the jury upon a consideration of all the evidence have a reasonable doubt growing out of any part of the evidence, the jury will give the defendant the benefit of such doubt and acquit him.
At the outset we should point out that the record transcript shows a given charge numbered 7 and also a refused charge numbered 7, and likewise a given charge numbered 8 and a refused charge numbered 8. The numbered 7 charges are not the same. Neither are the numbered 8 charges. So to minimize confusion they will be referred to as given charge number 7 and refused charge number 7; and given charge number 8 and refused charge number 8. *Page 500 
Refused charges 6 and 7 are identical. Although the same phrase is repeated in each charge, id est:
 ". . . and you cannot find the defendant guilty of any offense charged in the indictment until the evidence in the case satisfies you beyond all reasonable doubt of his guilt; . . ."
the charge is held good (with the repetition) in the case ofSmith v. State, 32 Ala. App. 155, 22 So.2d 607. However, the Smith
case was reversed for failure to give this charge only because the Smith record did not reveal any other charge, oral or written, which instructed the jury about the presumption of innocence of an accused in a criminal case. In both the court's oral instructions, and in other written charges given for the Defendant in the instant case, the theory of the Defendant's presumption of innocence is thoroughly and accurately presented to the jury.
The Defendant cites Burk v. State, 216 Ala. 655, 114 So. 72 as authority for approving his refused charge 8. A close reading of the Burk case actually says just the opposite. That opinion is written by Chief Justice Anderson, who himself dissents from the majority opinion. The majority held that this charge was bad because it requires the State alone to overcome the presumption of innocence. This holding recognizes the right of the jury to consider all evidence — that of the State and defense — in determining whether the presumption is sufficiently rebutted. That court said:
 "[T]he presumption continues until overcome by the evidence, whether produced by the state, or defendant."
Defendant's charge 7 of given charges is identical to Defendant's charge 10 of refused charges, and is substantially the same as Defendant's charge 17 of refused charges. Charge 19 of refused charges is amply covered by given charges 20 and 21. In fact the latter charges are stated more favorably for the defense than charge 19.
Refused charge 18 is covered substantially in the court's or al charge, id est:
 "That it is the duty of the jury to make all the witnesses including the Defendant to speak the truth if it can reasonably be done."
This, in effect, is the same as saying that all witnesses, including the Defendant, are presumed to be telling the truth and their testimony is to be reconciled with all the other evidence (which would include the defendant's presumption of innocence) if it is reasonably possible.
Refused charge 22 is certainly well covered in the Court's oral charge and Defendant's given written charges 23, 24 and 25. Likewise, refused charge 27, given its most intelligible meaning, is synonymously expressed by Defendant's given charges 23, 24, 25 and 26. It should be mentioned, however, that charge 27 is vague and quite uncertain in meaning, failing to connect the evidence of good character with the concept of reasonable doubt of his guilt. Contrary to Defendant's argument of what is held inCaldwell v. State, 36 Ala. App. 229, 55 So.2d 211, certiorari stricken, 256 Ala. 466, 55 So.2d 213; that case found that this charge is "abstract", and disapproved it.
Perhaps the refused charge presenting the most confusing here is number 14. Evidently the defense attorney mismatched his citations with charges. Refused charge 10 was not an issue in the following cases cited by Defendant as authority for this charge:
 Griffin v. State, 150 Ala. 49, 43 So. 197; Jones v. State, 20 Ala. App. 96, 101 So. 67; Odom v. State, 172 Ala. 383, 55 So. 820; Brown v. State, 150 Ala. 25, 43 So. 194; Davis v. State, 23 Ala. App. 419, 126 So. 414.
Refused charge 14 was not the charge approved or at issue inRobinson v. State, 36 Ala. App. 604, 61 So.2d 140. The State points this out, but concludes that the Defendant simply reworded the charges discussed in the Robinson case in order to formulate his charge 14. This is not the case. Defendant's refused charge 14 was approved verbatim in the case of Jones v. State, cited above, and the refusal to give this charge was held reversible error. The *Page 501 
question presented here then is whether or not this charge (14) was covered substantially by the other instructions, oral or written, given the jury. We believe that it was so covered. Such a charge is no different in meaning than the general charge that reasonable doubt of defendant's guilt arising from any or all the evidence should result in his acquittal. This principle was emphatically and repeatedly stated in Defendant's given charges 8, 9, 11, 12, 13, 15 and 16, as well as the court's general instructions.
 V CONCLUSION
We have considered the entire record under Code 1940, Title 15, § 389, including the following:
a. That notice of appeal was timely filed;
b. The Clerk's certificate;
c. The court reporter's certificate;
 d. The indictment (caption, charge, conclusions and endorsement); and its timeliness;
 e. Proceedings to determine applicability of Youthful Offenders Act;
 f. Judgment entry (arraignment — presence of counsel, twelve jurors, empanelling and swearing of jury, verdict, adjudication of guilt, allocutus, sentence and notice of appeal);
 g. Proceedings on the motion for new trial, if any; and
 h. Each ruling of the trial judge adverse to the appellant (including without limitation the written charges refused appellant, those given for the State — if any — and appellant's exception to the oral charge to the jurors).
From this examination we conclude that error is not made to appear.
The foregoing opinion was prepared by the Hon. DON P. BENNETT, Circuit Judge, temporarily on duty on the Court pursuant to subsection (4) of § 38, Title 13, Code 1940, as amended; the Court has adopted his opinion as its own.
The judgment below is hereby
AFFIRMED
All the Judges concur.