JAMES H. FAULKNER, Retired Justice.
Lobrenta Denise Burke was indicted for intentionally causing the death of Kenneth Burke in violation of § 13A-6-2, Code of Alabama 1975. She was convicted of criminal negligent homicide. She was sentenced to one year in the county jail and was ordered to pay $7,522.41 for restitution. This appeal followed.
In her appeal, Burke alleges and argues eight instances wherein she claims the trial court erred. One of the errors, Burke claims, is that the trial court would not permit her to testify as to her intent at the time of the shooting. We find that the trial court’s refusal constitutes reversible error. We pretermit discussion of the other issues presented for review.
The appellant gave the following account of the killing. She and the victim, Kenneth Burke, were married on August 8, 1985. Their marriage was not consistent with sailing on smooth waters. It was sometimes a stormy and violent behavior on the part of Kenneth. Four days before the shooting, Lobrenta informed Kenneth that she had had enough. They separated. Kenneth moved all of his belongings out of their mobile home situated in Hope Hull, Alabama.
About 10:30 p.m. on the night of the shooting, Lobrenta was in her home in the company of a friend, Jerry Middleton, who at trial was a state’s witness. She heard a noise around her home — starting at the back and ending toward the front. She called a friend to check out the noise, but he found nothing. About midnight she heard a knocking on her door. She got her gun that she had gotten two days before for protection, and went to the door. She opened it. Kenneth rushed in toward her. She raised the gun. It fired. Kenneth fell. He had been shot in the head.
State’s witness Jerry Middleton was at that time in a dilemma and he could not find an exit from the back bedroom in the mobile home. He testified that he heard Lobrenta scream; that Lobrenta came running back from the door to the bedroom screaming, “I believe I’ve shot Kenneth.”
Lobrenta testified as follows:
“A: When I got to the door, I reached for to cut the outside light on. It didn’t come on when I know that bulb was working earlier, but I thought to myself, I said to myself, maybe the bulb just blowed. Then I opened the door. When I first opened the door, I didn’t see anything. And all of a sudden, my husband sprang from under the bottom of the trailer and into the house, and he was headed at me with something in his hand. He was headed at me. When I saw something in his hand, I was coming up with the gun. It seemed as if it went off. I don’t know if it went off or if I fired.
“Q: What did you do as far as movement when you saw him, if anything, when he came toward you?
“A: You know, I sprang back, and I hollered out ‘Oh, Lord,’ just like that. “Q: Where was Jerry Middleton during that time?
“A: In my back bedroom. He never did leave out of the bedroom.
“Q: He never did come out?
“A: No.
“Q: Do you recall pulling the trigger?
“A: No.”
During the direct examination of Lobren-ta, the following occurred:
“Q: Did you intend to kill your husband?
“A: No.
*66 “Mr. Vickers: I object. That’s a jury issue.
“The Court: Sustained.
“Mr. Pool: What was the ruling?
“The Court: I would have sustained it but she answered it before he got it out.
“Mr. Vickers: I would request the court [to] tell the witness not to answer any questions when I object.
“The Court: Don’t answer any questions while an objection is being made.
“The witness: All right.
“Mr. Pool: Judge, I am not allowed to ask her if she intended to kill her husband?
“The Court: What her intentions were is solely a question for the jury. I think that’s the way it always has been, and that’s the way it’s going to be today.
“Mr. Pool: Okay.”
Refusal to permit Lobrenta to testify as to her intent at the time of the shooting is in conflict with Starr v. Starr, 293 Ala. 204, 301 So.2d 78 (1974). In Starr, the court overruled or ignored a plethora of Alabama cases holding that a witness could not testify as to his intent. The court stated:
“We therefore depart from the past and follow the dictates of conscience and the wisdom of noted writers and other members of this court. We now hold that a witness, on direct examination, may testify as to his intention, motive or other physically unexpressed mental state, provided that the testimony is material to the issues of the case.”
293 Ala. at 210, 301 So.2d at 82-83 (emphasis original).
Admittedly the admission or rejection of the witness’s intent is discretionary with the trial judge. In the instant case, the trial court evidently did not consider the Starr holding, considering his statement that intentions were solely a question for the jury — “always has been, and that’s the way it’s going to be today.”
The proviso in Starr is that the testimony be material to the issues of the case. In the instant case the issue of intent was material. Lobrenta was indicted for intentionally causing the death of her husband. One of the state’s witnesses testified that she came screaming “I believe I’ve shot Kenneth.” Lobrenta testified, “I don’t know if it [the gun] went off or if I fired.” The testimony reveals that there had to be a question of intent on her part. Consequently, she should have been permitted to testify as to her intent. The State argues in its brief that she did not object. The record shows that it was the State’s objection and the court’s sustaining that brought the issue into focus. Moreover, the trial court’s colloquy with defense counsel indicated that the judge had his mind made up and that any other discussion, objection, or exception would have been a futile gesture. The colloquy also was a clear message to the jury that intent could not be stated by the witness.
For the reason herein stated, the judgment and conviction are due to be reversed and the cause remanded.
The foregoing opinion was prepared by JAMES H. FAULKNER, Retired Justice, Supreme Court of Alabama, serving as a judge of this court, and his opinion is adopted as that of this court.
REVERSED AND REMANDED.
All the Judges concur.