TAYLOR, Presiding Judge.
The appellant, Dana L. Giffin, was convicted in the municipal court for the City of Florence of harassment. He appealed de novo to the Circuit Court for Lauderdale County and was convicted of harassment, a violation of § 13A-11-8, Code of Alabama 1975. He was sentenced to 180 days’ imprisonment; his sentence was split and he was ordered to serve 90 days in the Florence City jail and the remainder on probation.
The state’s evidence tended to show that on March 10, 1995, the appellant saw his ex-wife and their daughter in a drugstore in Florence. The appellant testified that he followed them to the back of the store and attempted to pick his daughter up. A tug-of-war ensued between the appellant and his ex-wife, Gail Slusher, with their daughter in the middle. Ms. Slusher testified that during the struggle the appellant repeatedly struck her on her arm and her chest and in her side in an attempt to take possession of their daughter.
I
The appellant contends that the trial court erred in not allowing him to testify as to his daughter’s well-being. The appellant asserts that he should have been allowed to testify concerning the welfare of his child because, he says, this testimony was relevant and material to his state of mind at the time of the offense. He contends in his brief to this court that under Starr v. Starr, 293 Ala. 204, 301 So.2d 78 (1974), this testimony should have been received into evidence as tending to establish his state of mind at the time and because it was a matter for the jury to decide.
The following occurred during direct examination of the appellant:
“Q [by defense counsel] — Did you ever see your daughter at any time between February 21 and March 10?
“A — No, I did not.
“Q — Okay, why did you have concern for the well-being of your child? And how old was she?
*1282 “A — At the time, she turned four on April 11, so she was almost four years old, not quite. Well,—
“Mr. Doggett [prosecutor]: ... [W]e are going to object to that. First of all, it’s leading, irrelevant.
“The Court: Sustained. It’s not relevant.
“Mr. Beasley [defense counsel]: Your Honor, pursuant to Starr v. Starr, the intent is material. And I think he’s entitled to testify as to what his state of mind [was]; and the facts that are concerning his state of mind are important and are relevant to this case.
“The Court: Objection sustained.
“Q — Mr. Giffin, why were you concerned about the well-being of your daughter ..., since you hadn’t seen her for almost three weeks?
“Mr. Doggett: Objection. Leading. Relevance.
“The Court: Sustained.
“Q — Mr. Giffin, why were you concerned on March 10 about the welfare of your daughter?
“Mr. Doggett: Same objection.
“The Court: Sustained.
“Q — Let me back up and go at it this way. Mr. Giffin, why did you go into [the drugstore] on March the 10?
“A — Because we were returning from your office after working on the modification of custody papers. We had gone to Hardee’s to have lunch. And we were driving down Wood Avenue towards Cox Creek to head out of town.
“And I happened to glance over and saw a van that was similar to one her mother had. And I thought maybe they were there and maybe Alex was there and I would get to see her, and see how she was.
“It had been three weeks since I had had any contact with her at all, after being mom and dad for almost two years.
“Q — Okay, and what was your purpose for going into [the drugstore]?
“A — Just wanted to see if she was there, and if she was there, what condition she was in.
“Q — Okay, why were you concerned about her condition?
“Mr. Doggett: Objection. Relevance. “The Court: Sustained.
“Mr. Beasley: Your Honor, it goes to Mr. Giffin’s state of mind.
“The Court: I have already ruled on that, Mr. Beasley.
“Mr. Beasley: I want my objection to be on the record.
“The Court: It’s on the record. That’s why we have a court reporter.
“Q — Mr. Giffin, what was your purpose for approaching your child, once you saw her when you went into [the drugstore]?
“A — I wanted to hug her. I hadn’t seen her in three weeks.
“Q — Okay, were there some habits that Gail had that gave you cause for concern for your child?
“Mr. Doggett: Objection. Leading. Relevance.
“The Court: Sustained.
“Mr. Beasley: Your Honor, I’d like to make an offer of proof.
“The Court: I’ll let you do that later. Let’s go on. We’ve got a trial we want to try. Let’s try what happened inside the [drugstore], not what happened in their marriage.
“Mr. Beasley: Well, Your Honor, I want to ask Mr. Giffin about what his state of mind was at that point in time. And pursuant to Starr v. Starr, and its progeny, Mr. Giffin is entitled to—
“The Court: I have already ruled that ■he’s not entitled to in this case. We are trying the [drugstore] case. We are not trying the divorce.
“Mr. Beasley: But Your Honor,—
“The Court: I have already ruled. Go ahead and ask another question.
“Q — Did you intend to confront your ex-wife when you went into [drugstore] on—
“Mr. Doggett: Objection. Self-serving. “The Court: Overruled. You can answer that question. Did you intend to confront your wife when you went in there that day?
*1283 “A — No. I wasn’t even sure she was there. I just saw that van and an off chance that she might be there with Alex.
“Q — Did you intend to harass or annoy your wife if you saw her in there?
“Mr. Doggett: Objection. Self-serving. “The Court: Overruled. You can answer that question.
“A — No, I just wanted to see my daughter and see how she was.
[[Image here]]
“A — And I wanted to take her out into the main area where the light is a lot better, to get a better look at her, see if she didn’t have any bruises or anything on her. And when I attempted to turn that way, Gail jerked her arm and started screaming and flailing her other arm.
“And I raised this elbow to keep from getting hit, in ease she was swinging in my direction. And then I just, I walked out through those doors.”
In Starr, the Alabama Supreme Court departed from long-standing caselaw, which did not allow evidence of the witnesses’ intent to be presented on direct examination. In Starr, the Alabama Supreme Court held:
“We therefore depart from the past and follow the dictates of conscience and the wisdom of noted writers and other members of this court. We now hold that a witness, on direct examination, may testify as to his intention, motive or other physically unexpressed mental state, provided that the testimony is material to the issues in the case.”
301 So.2d at 82-83. (Emphasis in original.)
The appellant was charged with harassment, which is defined in § 13A-11-8, Code of Alabama 1975. This Code section states, in part:
“A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he:
“a. Strikes, shoves, kicks or otherwise touches a person or subjects him to physical contact,”
(Emphasis supplied.)
The appellant’s state of mind at the time of the incident resulting from concern for his daughter was certainly material to whether he had the intent to harass his ex-wife when he entered the drugstore.
“Any orderly analysis, as to the admissibility of an item of evidence, should begin with the concept of materiality. Fruitful inquiry into materiality can only begin when the objecting party succeeds in forcing his opponent to announce the purpose for which he is offering the evidence. Once that purpose is identified, the materiality question then becomes one of whether that purpose is an issue in the case being litigated.”
See C. Gamble, McElroy’s Alabama Evidence, § 20.01 (4th ed. 1991).
The Alabama Rules of Evidence, which became effective on January 1, 1996, discuss materiality of evidence in Rule 401. Rule 401 states: “ ‘Relevant evidence’ means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” The Author’s Statement of the Rule states:
“Evidence is admissible only when the purpose for which it is offered is a material issue in the ease. Rule 401 includes, by use of the phrase ‘of consequence,’ this historic materiality requirement as part of the definition of ‘relevant evidence.’ ...
“Materiality may arise from the nature of the cause of action, the nature of the crime charged, or from the responsive pleadings in the case. Additionally, a matter may be made material by the proof elicited at trial. Just as pleading and proof may create materiality, they may likewise negate it.”
C. Gamble, Gamble’s Alabama Rules of Evidence, § 401(a) (1995) (footnote omitted).
This court following Starr stated in Jones v. State, 497 So.2d 215 (Ala.Cr.App.1986): “To hold that a witness cannot state his uneommunicated intention or purpose would be inconsistent with what was held in Starr v. Starr, 293 Ala. 204, 301 So.2d 78 (1974).” The appellate courts in this state have repeatedly followed Starr. See Ex parte Bunn, 611 So.2d 399 (Ala.1992); Price v. State, 383 So.2d 884 (Ala.Cr.App.), writ denied, 383 So.2d 888 (Ala.1980); Smith v. State, 335 So.2d 393 (Ala.Cr.App.), cert. de *1284 nied, 335 So.2d 397 (Ala.), cert. denied, 335 So.2d 398 (Ala.1976).
The trial court erred in sustaining the state’s objection to this testimony. However, there was sufficient testimony elicited for the appellant to establish his intent. The appellant testified that he wanted to see his daughter because he had not seen her in three weeks. He further testified, “I wanted to take her out into the main area where the light is a lot better, to get a better look at her, see if she didn’t have any bruises or anything on her.” No reversible error occurred here.
II
The appellant also asserts that the prosecution failed to prove the element of intent and that the judgment was against the weight of the evidence.
“Intent, being a mental purpose or state of mind, is rarely susceptible of direct proof. Intent, then, may be inferred by the jury from the evidence presented at the trial.” Hall v. State, 348 So.2d 870, 873 (Ala. Cr.App.), cert. denied, 348 So.2d 875 (Ala.1977). The jury heard testimony that the appellant and his ex-wife physically struggled over their daughter. His ex-wife testified that the appellant hit her on the arm, in the side, and on the chest. Witnesses testified that they observed the struggle and that they saw red marks on the body of the appellant’s ex-wife after the struggle.
“We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial.” Johnson v. State, 555 So.2d 818, 820 (Ala.Cr.App.1989). There was sufficient evidence from which the jury could infer intent on the part of the appellant, to harass his ex-wife and the jury’s verdict was not against the weight of the evidence.
For the foregoing reasons, the judgment in this cause is due to be, and it is hereby, affirmed.
AFFIRMED.
All the judges concur.